

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DGR:MRM/SMS/EDA
F. #2024R00494

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 30, 2024

<u>By ECF</u>

The Honorable Marcia M. Henry
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Andrew Simpson and Devone Thomas
<u>Criminal Docket No. 24-360 (EK)</u>

Dear Judge Henry:

The government respectfully submits this letter in support of the pretrial detention of the defendants Andrew Simpson, also known as "Drew" and "Drewski," and Devone Thomas, also known as "Von." Both defendants are charged by indictment in the above-captioned case with murder, in violation of 18 U.S.C. § 1111, for their roles in the June 7, 2024 stabbing death of Uriel Whyte at the Metropolitan Detention Center ("MDC"), in Brooklyn, New York. Simpson and Thomas are additionally charged with assault, in violation of 18 U.S.C. § 113(a)(6), obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1), and possession of contraband in prison, in violation of 18 U.S.C. § 1791(a)(1). Simpson and Thomas are each a flight risk and a danger to the community. For the reasons set forth below, both defendants should be detained pending trial.

I. <u>Factual Background</u>

a. <u>The Instant Charges</u>

On September 9, 2024, a grand jury in the Eastern District of New York returned a four-count indictment (the "Indictment") in the above-captioned case, charging Simpson and Thomas with four crimes related to their roles in the June 7, 2024 murder of Uriel Whyte, a fellow inmate at the MDC. Specifically, the Indictment charges Simpson and Thomas with premeditated murder within a federal detention facility, assault resulting in serious bodily injury within a federal detention facility, obstruction of justice and possession of one or more objects designed to be used as weapons within a prison.

To date, the evidence includes numerous witness statements, surveillance videos, physical evidence, photographs, laboratory reports and Uriel Whyte's autopsy report. The investigation has revealed the following.

At approximately 9:15 a.m. on June 7, 2024, Simpson and the victim became involved in a verbal dispute within housing unit K-82 of the MDC, where both had been detained for several months.[1]  Witnesses reported that prior to that morning, it was well known that Simpson and the victim had a contentious relationship in the housing unit.  At approximately 9:20 a.m., the disagreement escalated into a physical altercation between Simpson and the victim in the common area of the housing unit.

Following the initial physical one-on-one altercation, Simpson and his cellmate, Thomas, attacked the victim two-on-one several times inside their shared cell, likely by design in order to avoid detection by MDC guards and staff.  Following the first attack, at about 9:20 a.m., the victim was bloodied and cleaned himself up in a neighboring cell.  Around the same time, Simpson and Thomas went to the upstairs laundry room on the housing unit where they armed themselves with multiple makeshift knives.  Between approximately 9:30 and 9:35 a.m., Simpson and Thomas entered their cell on three separate instances to attack and stab the victim numerous times in the head, neck and back, including inflicting a fatal stab wound that severed his carotid artery.  The victim sought medical attention from MDC staff, and despite a rapid response by MDC medical staff and outside paramedics, became unresponsive less than 10 minutes after leaving Simpson and Thomas's cell.

Immediately after the victim left to seek help, Simpson and Thomas began to conceal their role in the murder.  Simpson and Thomas cleaned up blood inside their cell, changed and stashed away the clothes they wore during the fatal attack, and each hid the weapons they used to kill Whyte within seconds of the murder. Within minutes of Whyte leaving the unit, MDC staff identified several fresh injuries on both Simpson and Thomas, consistent with having been in a physical altercation.  Further, MDC investigators immediately reviewed video footage and recovered two weapons from the laundry room of unit K-82, where footage showed Thomas had run to seconds after the victim left the cell for the last time.

For these acts, a grand jury returned the Indictment against Simpson and Thomas.  If convicted of the premeditated murder of Whyte within the MDC, as charged in Count One of the Indictment, both defendants face a sentence of death or a mandatory term of life imprisonment, pursuant to 18 U.S.C. § 1111(b).

b.  Simpson's Criminal History

Simpson was initially ordered detained pending trial and incarcerated in the MDC in April 2022, following his indictment in this District for his participation in violent

---

[1]      Whyte was detained pending trial for charges of being a felon-in-possession of a firearm and ammunition.  See United States v. Uriel Whyte, 20-CR-390 (JMA).  Whyte was scheduled for trial before the Honorable Joan M. Azrack in September 2024.

gang crimes related to his participation in the criminal enterprise known as "Bamalife," which operated in East New York.  See United States v. Sutton, et al., 20-CR-323 (AMD), ECF Dkt. No. 36, at 1-10.  On February 12, 2024, Simpson pleaded guilty before the Honorable Ann M. Donnelly, to racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), including the predicate acts of attempted murder and access device fraud, and to possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. 924(c)(1)(A)(i).  Simpson was pending sentence at the time he and Thomas murdered Whyte.  When sentenced in that case, Simpson faces a mandatory minimum term of imprisonment of 5 years and a maximum of life with an estimated Guidelines range of 270 to 322 months' imprisonment, including the 60-month mandatory minimum.  Simpson's sentencing is currently scheduled for December 10, 2024.

Prior to that, Simpson was previously convicted by guilty plea on August 13, 2018, of Attempted Criminal Possession of a Weapon in the 3rd Degree, Loaded Firearm-Other than Person's Home, in violation of New York Penal Law § 265.03(3).  Simpson's prior conviction arises out of a March 2017 incident in which Simpson fired shots at another individual following an apparent dispute over a girl; Simpson did not hit anyone in the incident. He was sentenced to a term of two years' imprisonment.  Following his release, his parole was revoked on several occasions and his parole expired on or about April 20, 2021.  Simpson also has one prior misdemeanor conviction from February of 2022 for Unauthorized Use of a Motor Vehicle, in violation of New York Penal Law § 165.05(1), for which he received a conditional discharge.

    c.  Thomas's Criminal History

Thomas was initially ordered detained at the MDC in March 2024, following his indictment in the Southern District of New York for conspiracy to commit Hobbs Act robbery, four counts of Hobbs Act robbery, three counts of brandishing a firearm and one count of discharging a firearm in furtherance of a crime of violence.  See United States v. Devone Thomas, 24-CR-157 (DLC), ECF Dkt. No. 12, 1-10.[2]  Those charges were pending at the time he and Simpson murdered Whyte.  On August 12, 2024, Thomas pled guilty to both counts of a two-count superseding information filed in the Southern District of New York.  See United States v. Thomas, 24-CR-157 (S-2) (DLC), ECF Dkt. Nos. 43-48.  Thomas faces a mandatory minimum term of 10 years' imprisonment when sentenced.  Thomas's sentencing is currently scheduled for November 14, 2024.

II.  Legal Standard

The court "shall order" a defendant detained if it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and

---

[2]  Notably, Thomas was released on home confinement following his arrest upon a complaint in that case.  However, following several violations of the terms of his home confinement and the indictment being filed against him, Thomas was ordered detained.

the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  The government bears the burden of persuading the court by a preponderance of the evidence that the defendant is a flight risk or that he will obstruct or attempt to obstruct justice, or by clear and convincing evidence that the defendant is a danger to the community.  United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).  The government may proceed by proffer to establish facts relevant to a detention determination.  United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995).  Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Id. at 542. As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination.  Most proceed on proffers.  See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery."  United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131).  Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, "including whether the offense is a crime of violence . . ."; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including "whether, at the time of the current offense or arrest, the person was on probation [or] on parole"; and (4) the seriousness of the danger posed by the defendant's release.  See 18 U.S.C. § 3142(g).  Specifically, in evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

III.    Argument

No bail package will protect the community from the danger posed by the defendants, as each of the four factors set forth in Section 3142(g) militate in favor of both defendants' pretrial detention.

First, both defendants are charged with "crimes of violence" as that term is used in the Bail Reform Act.  18 U.S.C. § 3142(g)(1).  Simpson and Thomas are charged with premeditated murder and assault resulting in serious bodily injury.  Both of these offenses are

crimes of violence, as they clearly involve the use of physical force against another.  18 U.S.C. § 3156(a)(4).

Second, the weight of the evidence against Simpson and Warren is extremely strong and this factor, too, weighs in favor of detention.  There is overwhelming objective evidence that Simpson and Thomas murdered Whyte, including, but not limited to, surveillance video that shows both defendants repeatedly entering the cell in which Whyte sustained the fatal stab wound, and the recovery of various makeshift weapons from locations which Simpson and Thomas went in the immediate wake of the attacks on Whyte.

In addition, Simpson and Thomas face mandatory sentences of life imprisonment, or alternatively, death.  The likelihood of such severe punishment or lengthy imprisonment for each defendant gives each an overwhelming incentive to flee.  Indeed, sentences far less severe than those that Simpson and Thomas may face have been found to create a strong incentive to flee.  See United States v. Williams, 2020 WL 4719982, at *2 (Guidelines range of "92 to 115 months' imprisonment" gave defendant "a strong incentive to flee"); United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) (Kuntz, J.) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long a defendant has stronger motives to flee.").[3]

Third, the defendants' history and characteristics weigh heavily in favor of detention.  Through the conduct charged in the Indictment and their criminal histories described above, Simpson and Thomas have shown a total disregard for the lives of others and the law.  To begin, their pretrial or presentence detention at the MDC has clearly done nothing to deter either defendant from engaging in additional criminal conduct.  Far from it as each is charged with murdering another inmate while incarcerated.  If Simpson and Thomas were willing to engage in such extreme violence in custody, under the supervision of the Bureau of Prisons and the Court, each clearly represents an unacceptable risk of danger to the community on the basis of the charged conduct alone.  In addition, in each of their respective, pending criminal cases which resulted in their initial detention in the MDC, Simpson and Thomas engaged in multiple acts of violence and have brandished and discharged firearms during those violent crimes.  Simpson's prior state arrest and conviction in connection with a shooting, and his subsequent jail term, has not dissuaded him from engaging in violent criminal conduct.

Fourth, the risk of further violence and flight by the defendants is severe.  Both defendants' criminal histories underscore these risks, and the risks are further enhanced by Simpson's gang membership and Thomas's participation in a months' long conspiracy to

---

[3]     See also, e.g., United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [defendant's] Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee"); United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention because, inter alia, defendant "face[d] a mandatory minimum prison sentence of five years, a possible maximum sentence of 40 years").

commit violent, gunpoint robberies. Courts have consistently held that where a defendant is associated with a violent criminal organization, no conditions — even stringent conditions of home confinement — are sufficient to protect the community. See United States v. Irizzary, No. 17-CR-283 (LAP), 2020 WL 1705424, at *3 (S.D.N.Y. Apr. 8, 2020) ("Even under normal conditions, electronic monitoring does not suffice to restrain violent criminals who, like [the defendant], are members of organized gangs.").

       Further, Simpson and Thomas, in their separate pending cases, have been ordered detained. In each of those cases, Simpson and Thomas have pled guilty to violating 18 U.S.C. § 924(c), which offenses carry a statutory presumption, which they were unable to over overcome, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(B). In these cases, the defendants each face substantial prison terms, including mandatory terms of imprisonment, based upon their guilty pleas to violations of 18 U.S.C. § 924(c)(1)(A). Finally, pursuant to 18 U.S.C. § 924(c)(1)(D)(ii), those mandatory terms must run consecutively to any other term of imprisonment, including any term of imprisonment the defendants face in the Indictment. This only serves to provide the defendants with a greater incentive to flee if released.

IV.   <u>Conclusion</u>

       For the reasons set forth above, the government respectfully submits that no condition or combination of conditions will properly assure the safety of the community or the defendants' return to court if they are released on bail, and therefore requests that the Court order that the defendants be detained pending trial.

       Respectfully submitted,

       BREON PEACE
       United States Attorney

By:    /s/_____
       Michael R. Maffei
       Sophia M. Suarez
       Elizabeth D'Antonio
       Assistant U.S. Attorneys
       (718) 254-7000

cc:    Clerk of the Court (by ECF)
       Defense Counsel (by ECF)